UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
IINDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA E. MINOR,           ) | |
| )  | |
| Plaintiff,    ) | |
| )  | |
| vs.           ) | No. 1:15-cv-1017-RLY-DKL |
| )  | |
| CAROLYN W. COLVIN, Acting     ) | |
| Commissioner of Social Security,   ) | |
| )  | |
| Defendant.    ) | |

*Report and Recommendation*

Rebecca E. Minor appeals the decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). Chief Judge Richard L. Young designated the undersigned to issue a report and recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Because the ALJ made several errors in reaching his decision, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

I.     **Background**

In July 2012, Minor, then 38 years of age, filed an application for a period of disability and disability insurance benefits, alleging disability beginning October 1, 2011 because of joint pain, degenerative disk disease, neck pain, shaking all the time, depression, anxiety, anger issues, high blood pressure, and acid reflux. [R. 106.] Her

claim was denied initially and on reconsideration. Minor requested an administrative hearing, and hearings were held before an Administrative Law Judge ("ALJ") in April 2014 and August 2014. Minor, represented by counsel, appeared and testified. Two medical experts, one a physician and the other a psychologist, and a vocational expert ("VE") also testified.

At the hearing, Minor testified about her physical and mental impairments, their effects on her functional activities, and her treatment. She was working about 20 hours per week in housekeeping at a Super 8 hotel, but said she was limited by severe pain in her cervical spine running down her arm and low back pain. [R. 417-18.] She also stated, "If I don't crack my neck, I get head pain and I'm extremely bad and sometimes my head pain can last for a week." [R. 419.] She takes over-the-counter medications with caffeine such as Excedrin and prescription medications including Norco and muscle relaxers, and uses heating pads and cold rags to manage her pain. [R. 419-20.] She also has had physical therapy and home exercises. [R. 410.] She testified about "crippling" in her hands and feet, explaining that her hands and feet curl up and stiffen with activity. This occurs at least three to four times a day, but sometimes as often as three to four times a day. [R. 421.] Minor testified that she can walk a "couple of blocks" and then gets out of breath. [R. 422.] She said that her "breathing's not good." [*Id.*]

Minor provided medical records in support of her applications for benefits. Included among them were records from her primary care physician, Ina Agrawal, M.D. In November 2013, Minor was seen for a chief complaint of trouble breathing and shortness of breath. [R. 310.] She complained that her symptoms began about six to seven

2

months before and had progressively worsened. [*Id.*] She reported that she had cut down on her smoking. A spirometry showed mild chronic obstructive pulmonary disease. Dr. Agrawal diagnosed Minor with obstructive chronic bronchitis and prescribed medication for her. [R. 311.] Pulmonary function testing showed a $FEV_1$ (the volume exhaled during the first second of forced expiration) ranging from 0.41 to 0.91, reflecting that Minor's $FEV_1$ was 28% of the predicted score and her lung age (the age at which her lung function would be normal) was 110 years. [R. 321.] Minor, however, was only 39 years old at that time.

Minor had a consultative physical examination in September 2012. She was 65 inches tall. [R. 212.] In reviewing her systems, the examiner Dr. Kurt Jacobs, D.O., noted that she was positive for cough and shortness of breath. [*Id.*] On exam, he noted that her posture, gait, speed, and station were abnormal. She was unable to walk on heels, toes, tandem walk or squat. [R. 213.] He noted a decreased range of motion in the cervical spine. [R. 408.] Dr. Jacobs concluded that Minor suffers from neck and back pain secondary to degenerative disc disease that would probably not improve with time and that she also suffers from mental disease. [R. 213-14.] He limited her to sitting 2-4 hours, standing for 15-30 minutes, walking 400 feet, and pushing/pulling, lifting/carrying 10-20 pounds. [R. 214.] He opined that her understanding, memory, and sustained concentration were abnormal, but her social interaction was normal. [R. 214.]

Dr. Jacobs performed a consultative examination again in September 2013 and again in April 2014 with similar findings, except that Minor's range of motion was even more limited than before, with limitations in her cervical and lumbar spine and shoulder.

3

[R. 294.] He imposed further functional limitations. For example, he limited Minor to sitting 2-3 hours and found her social interaction was abnormal. [R. 263-65, 285-87.]

Minor has had several consultative mental status examinations as part of her disability determination. In 2012, Minor reported that she did not have health insurance and she went to one psychotherapy session which was free, but she could not afford it so did not return. [R. 218.] The clinical psychologist concluded based on her examination that Minor's cognitive abilities were within normal limits, but she "appears to have trouble interacting socially" and that "[w]orking in an environment with the public would likely be difficult." [R. 220.] In addition, a mental residual functional capacity assessment completed in 2012 found Minor to have moderate limitations in several areas under sustained concentration and persistence and social interaction. [R. 223-24.]

Minor was examined by another clinical psychologist in 2013. She reported that she had worked "a little bit" at Kmart performing cleaning, but was fired because she "was too slow." [R. 272.] On examination, it was noted that Minor had some difficulty with some instructions and questions. [R. 273.] The psychologist gave a Medical Source Statement, opining that Minor had mild limitations in her ability to understand, remember, and carry out complex instructions, and in the ability to make judgments on complex work-related decisions. [R. 276.] He assessed her as having mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers and in her ability to respond appropriately to usual work situations and changes in a routine work setting. [R. 276-77.] The psychologist cited Minor's decreased focus and concentration as factors supporting the assessment. [R. 277.]

4

In 2014 the clinical psychologist performing a mental status exam noted that Minor "had problems remaining attentive to the tasks requested of her" and "had to be redirected numerous times throughout the examination." [R. 281.] The psychologist concluded that Minor "does not appear to have a lot of trouble interacting socially," but she "had a difficult time attending and concentrating throughout the examination" and "[h]er level of persistence may be negatively impacted by [her mental and physical health issues]." [R. 282.] He assessed Minor's ability to do mental work activities and found her to have mild restrictions in her ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions; a moderate restriction in the ability to understand and remember complex instructions; and a marked restriction in the ability to carry out complex instructions and make judgments on complex work-related decisions. [R. 283.]

Dr. Carl Manders, board certified in neurosurgery and pain management reviewed the medical evidence in the case. [R. 405-06.] He testified that Minor has chronic pain, but "does not meet any listing" because there was no objective evidence of nerve compression. [R. 406-07.] He added that there were no neurological findings and that based on his review of the medical evidence, Minor would be able to perform light activity. [R. 406.] Dr. Manders said that an MRI of Minor's cervical spine noted severe left neural foraminal narrowing with an effect on the nerve root, but that was not objective nerve root involvement. [R. 407.] He explained that it was common to see an "extremely abnormal MRI or an x-ray which does not translate into any functional impairment whatsoever. And that's what we're dealing with here." [*Id.*] He further

5

explained that there can be a psychological component to pain and how a person reacts to pain is "purely subjective." [R. 407-08.]

Dr. Don Olive, a licensed clinical psychologist [R. 408], testified that he had reviewed the medical evidence in the case [R. 412], which contained diagnoses of an unspecified neuro disorder, generalized anxiety disorder, panic disorder, agoraphobia, major depression, and bipolar disorder. [R. 412-13.] He testified that Minor did not meet or equal any listed impairment. [R. 413.] In his opinion, she would be limited to "unskilled work or simple, repetitive tasks," "should have no more than occasional contact with the public and with peers," and should have no "type of quotas or production work." [R. 414.] He said that the limitations he imposed would account for "a persistence in pace that [Minor] may be lacking due to concentration." [R. 415.]

The ALJ determined that Minor met the insured requirements of the Act through March 31, 2015 [R. 23], so she had to establish disability on or before that date to be entitled to disability benefits. The ALJ used the five-step sequential process for analyzing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.902(a). At step one he found that Minor had not engaged in substantial gainful activity since the alleged onset date. [R. 23.] At step two he determined that she suffered from severe impairments of chronic pain, unspecified major depression, generalized anxiety disorder, bipolar disorder, and panic disorder with agoraphobia. [*Id.*] At step three the ALJ found that she did not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 24.]

6

The ALJ assessed Minor's residual functional capacity, concluding that she could perform light work with restrictions:

> she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk six hours each during an eight-hour workday and sit for six hours during an eight-hour workday. She should not climb ladders, ropes, or scaffolds. She is limited to unskilled or simple and repetitive tasks and work that requires no production quotas or fast-pace. Lastly, [she] should have no more than superficial interaction with the general public and peers.

[R. 25.]

The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience, who was restricted to light work and could lift and carry 20 pounds occasionally, ten pounds frequently, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday; no ladders, ropes, or scaffolds; any work would be unskilled, or simple and repetitive; only occasional contact with the general public and peers, and no production or quota work or fast-paced situations. [R. 428.] The VE said that such an individual would be able to perform jobs of office helper, office machine operator, and mail clerk (other than postal service). [R. 429.]

Based on the VE's testimony, the ALJ found at steps four and five that Minor was unable to perform her past relevant work but could perform other available jobs in the national economy. [R. 30–31.] Accordingly, he decided that she was not disabled under the Act. [R. 32.] After the Appeals Council denied review, Minor sought judicial review.

## II.   Discussion

In challenging the decision denying her applications for benefits, Minor raises several arguments. First, she argues that the ALJ erred in analyzing the evidence

regarding whether she meets or equals any listed impairment. She also argues that the ALJ's hypothetical to the VE was flawed because it failed to account for her moderate limitations in concentration, persistence or pace as found by the ALJ. Finally, she maintains that the ALJ erred in failing to address the evidence that she suffers from COPD with listing level $FEV_1$ scores as well as chronic, frequent headaches and migraines.

The Act provides for the payment of benefits to individuals who have contributed to the program and suffer from a physical or mental disability. It also provides for the payment of disability benefits to indigent persons under the SSI program. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "Disability" is the "inability to engage in any substantial gainful activity [because] of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last … not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

Judicial review of an ALJ's decision is limited to determining whether the findings are supported by substantial evidence and whether there has been an error of law. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Stepp*, 795 F.3d at 718. The district court considers the record as a whole but cannot reweigh the evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718. The ALJ need not specifically mention every piece of evidence in the record but he must build a "logical bridge" from the evidence to his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

8

The ALJ's first error requiring remand occurred at step 3 when he evaluated whether Minor meets or equals a listed impairment. The ALJ specifically mentioned Listings 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 11.00 (neurological listings), 12.04 (affective disorders) and 12.06 (anxiety related disorders). In concluding that she did not meet or equal any listed impairment, the ALJ purportedly relied on the hearing testimony of the medical experts, Dr. Manders who testified regarding Minor's physical impairments, and Dr. Olive who testified as to her mental impairments. Although Dr. Olive testified that Minor does not meet or equal any listing, as the Commissioner acknowledges, Dr. Manders merely testified that she "does not meet any listing" for physical disorders. He never actually opined whether she equals the severity of a listed impairment. While Dr. Manders also testified that Minor would be able to perform light activity [R. 406], the undersigned is hesitant to assume from this that he concluded she failed to equal any listing.

The ALJ found that "Listing 1.02 and 1.04 are not met or equaled because [Minor] does not have a significant restriction of function in the affected joints or evidence of nerve root compression…." [R. 24.] There is evidence that Minor does not have such joint restriction or nerve root compression. And it is true that the ALJ also found that she "was able to walk without support" [R. 27] and "needed no assistive device" to ambulate. [R. 28.] But the listing criteria must be satisfied in order to *meet* a listing. It does not necessarily follow from a claimant's failure to *meet* a listing that the claimant also fails to *medically equal* the listing.

9

Even assuming that the ALJ's error in finding that Minor did not medically equal Listing 1.04 was harmless, another error at step 3 requires remand. The ALJ completely failed to address the evidence that Minor meets Listing 3.02 for chronic pulmonary insufficiency with an $FEV_1$ less than 1.35 (assuming her height of 66 inches). And even if Minor did not meet Listing 3.02, the ALJ wholly failed to address the evidence of her breathing problems. Thus, there is no assurance that the ALJ considered her breathing problems or lung function in assessing her RFC. The Commissioner argues that the ALJ noted Minor's testimony that she experienced shortness of breath from walking only two blocks, and he did. [R. 27.] Yet he failed to address the diagnosis of chronic obstructive pulmonary disease or other evidence of Minor's insufficient lung function. The failure to evaluate this line of evidence was error. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("When determining residual functional capacity, the ALJ 'must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling.'" (quoting *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009)).

Moreover, despite evidence in the record of head pain that sometimes "can last for a week," [R. 419], the ALJ did not mention Minor's head pain, headaches, or migraines. The evidence establishes that she has a history of severe migraines and frequent headaches. [*See, e.g.*, R. 176, 178, 197, 201, 263, 279, 371, 377, 420.] The Commissioner faults Minor for not testifying about her headaches and migraines or even mentioning them at the hearing. Although it is "the claimant's obligation to explain why certain conditions are disabling, it is the ALJ who carries the burden of developing the record."

10

*Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (citations omitted). Because the ALJ never mentioned the evidence of headaches and migraines, it appears he did not consider it, which was error. The ALJ will have another opportunity to consider Minor's headaches and migraines and their effect on her ability to work on remand.

For completeness, the undersigned addresses Minor's argument that the hypothetical to the VE failed to account for her limitations in concentration, persistence or pace. The hypothetical question posed to the VE must account for all of a claimant's limitations, including deficiencies in concentration, persistence or pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). It seems, however, that the hypothetical adequately accounted for the limitations in concentration, persistence or pace found by the ALJ. He determined that Minor was "limited to unskilled or simple and repetitive tasks and work that requires no production quotas or fast-pace." [R. 25.] This finding was grounded in Dr. Olive's opinion that Minor would be limited to "unskilled work or simple, repetitive tasks" and should have no "type of quotas or production work." [R. 414.] And we know that this opinion accounted for Minor's deficiencies in concentration, persistence, or pace: Dr. Olive said so. [*See* R. 415 (stating that the limitations imposed would account for "a persistence in pace that [Minor] may be lacking due to concentration").] The ALJ gave Dr. Olive's opinion "significant weight" [R. 30] and included his mental restrictions in the RFC finding and the hypothetical to the VE.

## Conclusion

For the foregoing reasons, it is recommended that the decision to deny benefits be **reversed and remanded** for further proceedings consistent with this recommendation.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). The district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection may result in forfeiture of the right to *de novo* determination by the district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**The parties should not expect extensions of time to file either objections or responses. No replies will be permitted.**

DATED: 07/11/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record